**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| DYLAN LEE SOCKNESS,<br><br>Plaintiff,<br>v.<br><br>C.O. ZOEY CAREY, C.O. HENRY BEEKMAN, BRAD MCCOY, MARCUS PESCHKE, SHERIFF ZUEHKE, and WAUSHARA COUNTY,<br><br>Defendants. | Case No. 25-CV-1496-JPS<br><br>**ORDER** |

Plaintiff Dylan Lee Sockness, an inmate confined at the Wisconsin Resource Center ("WRC"), filed a pro se complaint under 42 U.S.C. § 1983 alleging violations of his constitutional rights. ECF No. 1. On December 4, 2025, the Court screened the fourth amended complaint and allowed various claims to proceed. ECF No. 21. Thereafter, Plaintiff filed three motions to amend the complaint, ECF Nos. 30, 47, 51, a motion for default judgment, ECF No. 31, two motions for a scheduling conference, ECF Nos. 45, 49, a motion for a court order, ECF No. 50, a motion to appoint counsel, ECF No. 53, and a motion to expedite scheduling order, ECF No. 54. On July 15, 2026, Defendants filed a brief in opposition to the most recent motion to amend the complaint. ECF No. 52.

First, the Court will grant Plaintiff's most recent motion to amend the complaint in the interest of justice to bring claims against additional defendants and to add a *Monell* claim and state law negligence claim. *See* Fed. R. Civ. P. 15. The Court therefore treats the proposed amended complaint, ECF No. 51-1, as the operative complaint going forward and will

instruct the Clerk of Court to docket the fifth amended complaint. The Court will deny Plaintiff's prior motions to amend as moot; will deny Plaintiff's motion for default judgment because it was filed prior to Defendants being served; and will deny as moot Plaintiff's motions for a scheduling conference, court order, and scheduling order. The Court will issue a scheduling order once Defendants have filed a responsive pleading to the fifth amended complaint. The remainder of this Order screens the fifth amended complaint and considers the motion to appoint counsel. The Court notes that is very unlikely to grant any additional motions to amend the complaint, and this case should proceed forward on the claims Plaintiff has identified.

## 1. SCREENING THE FIFTH AMENDED COMPLAINT

### 1.1 Screening Standard

When a plaintiff requests leave to proceed in forma pauperis, the Court must screen the complaint. *See* 28 U.S.C. § 1915(e)(2). If the court finds any of the following, then the "court shall dismiss the case": the action is frivolous or malicious, the complaint fails to state a claim upon which relief may be granted, or the complaint seeks monetary relief against a defendant who is immune from such relief. *Id.*

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. *Denton v. Hernandez*, 504 U.S. 25, 31 (1992); *Hutchinson ex rel. Baker v. Spink*, 126 F.3d 895, 900 (7th Cir. 1997). The Court may dismiss a claim as frivolous where it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. *Neitzke v. Williams*, 490 U.S. 319, 327 (1989).

To state a claim, a complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R.

Civ. P. 8(a)(2). In other words, the complaint must give "fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level." *Kubiak v. City of Chicago*, 810 F.3d 476, 480 (7th Cir. 2016) (internal citation omitted). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

In reviewing the complaint, the Court is required to "accept as true all of the well-pleaded facts in the complaint and draw all reasonable inferences in favor of the plaintiff." *Kubiak*, 810 F.3d at 480–81. However, the Court "need not accept as true 'legal conclusions, or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (citing *Ashcroft*, 556 U.S. at 678) (internal bracketing omitted). A court is obligated to give pro se litigants' allegations a liberal construction. *Kelsay v. Milwaukee Area Tech. Coll.*, 825 F. Supp. 215, 217 (E.D. Wis. 1993). Pro se complaints are held to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

**1.2 Plaintiff's Allegations**

Plaintiff names C.O. Zoey Carey ("Carey"), C.O. Henry Beekman ("Beekman"), Lt. Bradley McCoy ("McCoy"), Sgt. Marcus Peschke ("Peschke"), Sheriff Zuehke ("Zuehke") and Waushara County as defendants in the fifth amended complaint. ECF No. 51-1 at 1. Plaintiff was a pretrial detainee incarcerated at the Waushara County Jail ("WCJ") at all times relevant to the complaint. *Id.* On August 13, 2025, Beekman failed to protect Plaintiff from self-harm. *Id.* Plaintiff was cutting himself, and

Beekman came to check on him multiple times. *Id.* Beekman saw Plaintiff cutting himself and said, "Good enough," and walked away. *Id.* Plaintiff was in extreme pain at this time. *Id.* Plaintiff told Beekman he cut himself, and then Beekman put Plaintiff in a restraint chair until an EMT came. *Id.*

On September 8, 2025, Carey told Plaintiff that there was only one olanzapine pill in his pack and that she would have to call a nurse for a different dosage. *Id.* Plaintiff told her, "I will just cut then cause I need those meds." *Id.* Beekman arrived and told Plaintiff he was going to segregation. *Id.* Plaintiff responded that he would not go to segregation because the nurse messed up his medicine. *Id.* Carey told the inmates to put their uniforms on, shut the door, and left for about fifteen minutes. *Id.* The rest of the inmates went to recreation, but Plaintiff was going to segregation. *Id.* Plaintiff told Carey and Beekman multiple times that he was going to cut himself when he got to segregation. *Id.* Carey and Beekman put Plaintiff in the segregation cell with a suicide gown and shut the door. *Id.* Plaintiff put the gown where the camera could not see and sat down and began to cut himself with a staple. *Id.* at 1–2. Beekman later came to the door while Plaintiff continued to cut himself. *Id.* at 2. Plaintiff was eventually placed back in the restraint chair. *Id.*

On October 3, 2025, Plaintiff placed a canteen bag over his head. *Id.* at 4. Staff asked Plaintiff if he would give them the bag; Plaintiff complied and was again put on suicide watch. *Id.* On October 6, 2025, Plaintiff was placed in the chair on suicide watch, and he swallowed a staple. *Id.* Plaintiff was then taken to Theada Care in Wildrose, Wisconsin. *Id.* On October 7, 2025, Plaintiff was in the shower area and banging his head on the railing. *Id.* Later that day, Beekman locked Plaintiff in the shower and went to clean

up Plaintiff's vomit. *Id.* Plaintiff "bit a chunk out of his right arm." *Id.* Plaintiff was placed back in the restraint chair until EMTs arrived. *Id.*

Peschke and McCoy violated Plaintiff's First Amendment rights by retaliating against him for filing grievances and lawsuits. *Id.* They also violated his due process rights by placing him in administrative segregation with limited property and without any hearings or paperwork. *Id.* They told jail staff not to print pro se forms and would hold Plaintiff's mail for days before sending it to the courts. *Id.*

Plaintiff alleges there is no way Zuehke did not know of staff's failure to protect him based on receiving reports from the sheriff deputy. *Id.* Plaintiff also alleges that Waushara County and Zuehke violated his rights by failing to train officers how to deal with inmates experiencing a mental health crisis. *Id.* Beekman told Plaintiff that they had a bed restraint as an option but that he was never trained to use it. *Id.* Plaintiff further alleges that officers are not trained to call crisis when inmates need help. *Id.* The failure to train employees has caused Plaintiff great harm. *Id.*

### 1.3 Analysis

Because it appears Plaintiff was a pretrial detainee at the time of the allegations, his failure to protect claim arises under the Due Process Clause of the Fourteenth Amendment.[1] *See Kemp v. Fulton County*, 27 F.4th 491, 495–97 (7th Cir. 2022). Unlike an Eighth Amendment claim, a pretrial detainee claim is governed by an objective standard. Under that standard, as recently clarified by the Seventh Circuit in *Pittman v. Madison County*, 108 F.4th 561, 566 (7th Cir. 2024), once a pretrial detainee proves that the defendant

[1]The Court notes that Defendants will be free to argue later if they believe the Eighth Amendment should apply to Plaintiff's claims instead.

officer's failure to act was purposeful and intentional, the sole question is an objective one: did the defendant "take reasonable available measures to abate the risk of serious harm?" *Id.* at 572. As the court emphasized, "[t]he objective reasonableness of a decision to deny medical care . . . does not consider the defendant's subjective views about risk of harm and necessity of treatment. Instead, the proper inquiry turns on whether a reasonable officer in the defendant's shoes would have recognized that the plaintiff was seriously ill or injured and thus needed medical care." *Id.* at 570.

Here, Plaintiff alleges that the Beekman, Carey, and Zuehke were aware that he faced a serious risk of self-harm and failed to appropriately act to protect him or provide mental health services. Plaintiff further alleges that after these defendants were aware of Plaintiff's situation, Plaintiff engaged in self-harm by cutting himself. At this early stage, the Court will allow Plaintiff to proceed on a Fourteenth Amendment claim against Beekman, Carey, and Zuehke for their failure to protect him from a serious risk of self-harm.

Next, the Court finds that Plaintiff may proceed on a First Amendment retaliation claim against McCoy and Peschke. To prevail on a retaliation claim, Plaintiff must ultimately show that: "(1) he engaged in activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014).

Here, Plaintiff alleges that these defendants retaliated against him for filing grievances and lawsuits related to his self-harm incidents. It is well established that a prisoner's ability to file lawsuits is protected by the First Amendment. *See Hughes v. Scott*, 816 F.3d 955, 956 (7th Cir. 2016). As for the

second element, Plaintiff alleges suffering deprivations—being placed in segregation and denied access to legal paperwork—that, we can infer, would likely dissuade a person of ordinary firmness from exercising further First Amendment activity. *See Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012). At the pleadings stage, the Court finds these allegations are sufficient to proceed on a First Amendment retaliation claim against McCoy and Peschke.

Next, the Court will allow Plaintiff to proceed against Waushara County. Section 1983 grants a private right of action against a "person" who acts under color of state law to deprive another of rights under federal law, including the Constitution. A key part of § 1983's doctrinal structure is the difference between individual and governmental liability. In *Monell v. Department of Social Services of City of New York,* 436 U.S. 658 (1978), the United States Supreme Court found that a plaintiff may proceed against a municipal government so long as a constitutional violation was caused by: (1) an express government policy; (2) a widespread and persistent practice that amounted to a custom approaching the force of law; or (3) an official with final policymaking authority. 436 U.S. at 690–91; *Glisson v. Ind. Dep't of Correction*, 849 F.3d 372, 379 (7th Cir. 2017) (en banc).

Here, at the early pleading stage, Plaintiff sufficiently alleges facts to state a *Monell* claim against Waushara County. Plaintiff generally alleges that Waushara County failed to train staff to handle his mental health crisis. He also alleges that Beekman specifically told Plaintiff he was never trained to use certain techniques. As such, Plaintiff may proceed a on a *Monell* claim against Waushara County.

Finally, the Court will allow Plaintiff to proceed on a state law negligence claim against Carey, Beekman, and Zuehke. To sustain a claim

for negligence, Plaintiff must allege "(1) a breach of (2) a duty owed (3) that results in (4) an injury or injuries, or damages." *Paul v. Skemp*, 625 N.W.2d 860, 865 (Wis. 2001). Plaintiff alleges that these defendants were negligent for failing to protect him from self-harm. At this early stage, the Court will exercise its supplemental jurisdiction under 28 U.S.C. § 1367(a) and will allow Plaintiff to proceed on a state law claim of negligence against Carey, Beekman, and Zuehke.

**2. MOTION APPOINT COUNSEL**

The Court will deny Plaintiff's motion to appoint counsel. As a civil litigant, Plaintiff has "neither a constitutional nor statutory right to a court-appointed attorney." *James v. Eli*, 889 F.3d 320, 326 (7th Cir. 2018). However, under 28 U.S.C. § 1915(e)(1), a "court may request an attorney to represent any person unable to afford counsel." A court should seek counsel to represent a plaintiff if: (1) he has made reasonable attempts to secure counsel; and (2) "'the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it.'" *Navejar v. Iyiola*, 718 F.3d 692, 696 (7th Cir. 2013) (quoting *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc)). Whether to appoint counsel in a particular case is left to a court's discretion. *James*, 889 F.3d at 326; *McCaa v. Hamilton*, 893 F.3d 1027, 1031 (7th Cir. 2018).

The first element of *Pruitt* is fairly easy to satisfy, but it is not toothless, and it is not a mere technical condition of submitting a certain number of rejection letters. If it was, then a Wisconsin prisoner litigating a § 1983 action could submit rejection letters from ten randomly selected criminal defense lawyers from Nevada and call his work complete. This cannot be. The purpose of the reasonable-efforts requirement is to ensure that if a court and private lawyers must expend scarce resources to provide

counsel for a prisoner, he has at least made a good-faith effort to avoid those costs by getting a lawyer himself. To fulfill this duty, a pro se prisoner should reach out to lawyers whose areas of practice suggest that they might consider taking his case. If he learns that some of the lawyers he has contacted do not, he should reach out to others before he concludes that no one will help him.

Here, Plaintiff provides evidence showing that he contacted attorneys to represent him in this matter. ECF No. 53. The Court finds that Plaintiff satisfies the first *Pruitt* question.

Plaintiff's request must also succeed on the second *Pruitt* question: whether the difficulty of the case exceeds his capacity to coherently present it. This assessment must be made in light of the particular capabilities and circumstances presented by each pro se litigant. *James*, 889 F.3d at 326–27. The Court of Appeals explains:

> The second step is itself grounded in a two-fold inquiry into both the difficulty of the plaintiff's claims and the plaintiff's competence to litigate those claims himself. The inquiries are necessarily intertwined; the difficulty of the case is considered against the plaintiff's litigation capabilities, and those capabilities are examined in light of the challenges specific to the case at hand. Ultimately, the question is not whether a lawyer would present the case more effectively than the pro se plaintiff; if that were the test, district judges would be required to request counsel for every indigent litigant. Rather, the question is whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself. Notably, this inquiry extends beyond the trial stage of the proceedings. The relevant concern is whether the plaintiff appears competent to litigate his own claims, given their degree of difficulty. This includes all of the tasks that normally attend litigation: evidence gathering, preparing and responding to motions and other court filings, and trial.

*Id.* (citations and quotations omitted). While a court need not address every concern raised in a motion for appointment of counsel, it must address "those that bear directly" on the individual's capacity to litigate his case. *McCaa*, 893 F.3d at 1032.

The balancing contemplated in the second *Pruitt* step must be done against the backdrop that district courts cannot be expected to appoint counsel in circumstances which are common to all or many prisoners. *See Bracey v. Grondin*, 712 F.3d 1012, 1017–18 (7th Cir. 2013); *Pruitt*, 503 F.3d 647, 656 (observing that the Seventh Circuit has "resisted laying down categorical rules regarding recruitment of counsel in particular types of cases"); *Harper v. Bolton*, 57 F. Supp. 3d 889, 893 (N.D. Ill. 2014). Doing so would place untenable burdens on court resources. It would also turn the discretion of § 1915(e)(2) on its head, making appointment of counsel the rule rather than the exception.

Several pronouncements from the Court of Appeals appear to be in tension with this principle. First, the Seventh Circuit notes that "complexity increases and competence decreases as a case proceeds to the advanced phases of litigation." *James*, 889 F.3d at 327. It deems the "[a]dvanced phases" to include those from discovery onward. *Id.*; *McCaa*, 893 F.3d at 1032. But nearly every prisoner case proceeds to discovery, as the district court applies exceedingly lenient review during initial screening.

Second, the Seventh Circuit instructs that district courts should evaluate a prisoner's competency irrespective of the involvement of a "jailhouse lawyer." *McCaa*, 893 F.3d at 1033; *Walker v. Price*, No. 17-1345, 2018 WL 3967298, at *5 (7th Cir. Aug. 20, 2018). How courts should do this is not clear. A court rarely knows whether a filing was prepared by the plaintiff or someone helping him. And if a court does know that the plaintiff

is receiving help, how can it assess his ability to litigate without knowing which portions of the filings are his work, and which come from the jailhouse lawyer? In *Walker*, the court determined that the inmate's work product decreased in quality after his jailhouse lawyer was transferred to another prison. 2018 WL 3967298, at *6. Yet a savvy prisoner, looking to secure counsel for himself, could do this on purpose, crafting his filings to downplay his own litigation capabilities. A court would have no way to assess whether the inmate is sandbagging it.

Finally, the Court of Appeals indicates that claims involving the state of mind of the defendant, such as those involving deliberate indifference, are particularly complex. *James*, 889 F.3d at 327–28; *McCaa*, 893 F.3d at 1032. Yet a government official's culpable mental state is the foundation for most constitutional claims. Indeed, it is often the defining characteristic that sets § 1983 claims apart from their state-law tort analogues. Deliberate indifference is essential to nearly all claims of cruel and unusual punishment, excessive force, mistreatment of medical needs, and First Amendment and due process violations. *See Kingsley v. Henderson*, 135 S. Ct. 2466, 2473 (2015); *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Hambright v. Kemper*, 705 F. App'x 461, 462 (7th Cir. 2017); *Milton v. Slota*, 697 F. App'x 462, 464 (7th Cir. 2017) ("*[N]egligently* inflicted harm does not amount to a constitutional violation.") (emphasis in original). Taken together, these claims comprise the vast majority of prisoner litigation in this District. If state-of-mind issues are generally beyond the ability of most pro se litigants to prove, then a court likely would need to appoint counsel in nearly every prisoner case. This is plainly impossible.

The guiding rule has always been that appointment of counsel is the exception rather than the rule in pro se prisoner litigation. Yet a confluence of all-too-common circumstances—discovery, jailhouse lawyers, and claims concerning state of mind—militate in favor of the appointment of counsel. As the list of reasons to appoint counsel grows, the reasons not to do so shrink. This District's resources have not kept pace.

Against this backdrop, the Court finds that Plaintiff has not presented sufficient evidence and argument showing that he cannot litigate or try this matter competently on his own. Plaintiff indicates that he requires counsel because he has no legal experience, has limited time based on his work and classes schedule, and has a low IQ. ECF No. 53.

It is true, as Plaintiff intuits, that a lawyer would be helpful in navigating the legal system; trained attorneys are of course better positioned to successfully litigate cases. But Plaintiff's lack of legal training brings him in line with practically every other prisoner or former prisoner litigating in this Court. Plaintiff has clearly presented his claims to the Court and does not provide any detail as to why this case exceeds his abilities. Further, the Court will assist Plaintiff in this regard (as it does with all prisoner litigants) by providing copies of the most pertinent federal and local procedural rules along with its scheduling order. Thus, ignorance of the law or court procedure is generally not a qualifying reason for appointment of counsel. Plaintiff has not demonstrated that his case is exceptional to require counsel. As such, the Court is obliged to deny Plaintiff's motion for counsel at this time.

**3. CONCLUSION**

In light of the foregoing, the Court finds that Plaintiff may proceed on the following claims pursuant to 28 U.S.C. § 1915:

**Claim One:** Fourteenth Amendment claim against Carey, Beekman, and Zuehke for their deliberate indifference to Plaintiff's serious risk of self-harm.

**Claim Two:** First Amendment retaliation claim against McCoy and Peschke.

**Claim Three:** *Monell* claim against Waushara County for its failure to train staff.

**Claim Four:** State law negligence claim against Carey, Beekman, and Zuehke.

Accordingly,

**IT IS ORDERED** that Plaintiff's motion to file an amended complaint, ECF No. 51, be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's duplicative motions to file an amended complaint, ECF Nos. 30, 47, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that the Clerk of Court docket the fifth amended complaint, ECF No. 51-1, as the operative complaint going forward;

**IT IS FURTHER ORDERED** that Plaintiff's motion for default judgment, ECF No. 31, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for a scheduling conference, ECF No. 45, motion for a scheduling order, ECF No. 49, motion for a court order, ECF No. 50, and motion to expedite scheduling order, ECF No. 54, be and the same are hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to appoint counsel, ECF No. 53, be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that the U.S. Marshals Service shall serve a copy of the fifth amended complaint, ECF No. 51-1, and this Order upon Defendants **Waushara County and Sheriff Zuehke**, pursuant to Federal Rule of Civil Procedure 4. Plaintiff is advised that Congress requires the U.S. Marshals Service to charge for making or attempting such service. 28 U.S.C. § 1921(a). Although Congress requires the Court to order service by the U.S. Marshals Service, it has not made any provision for these fees to be waived either by the Court or by the U.S. Marshals Service. The current fee for waiver-of-service packages is $8.00 per item mailed. The full fee schedule is provided at 28 C.F.R. §§ 0.114(a)(2), (a)(3). The U.S. Marshals Service will give Plaintiff information on how to remit payment. The Court is not involved in collection of the fee;

**IT IS FURTHER ORDERED** that, Defendants shall file a responsive pleading to the fifth amended complaint, ECF No. 51-1; and

**IT IS FURTHER ORDERED** if Defendants contemplate a motion to dismiss, the parties must meet and confer before the motion is filed. Defendants should take care to explain the reasons why they intend to move to dismiss the complaint, and Plaintiff should strongly consider filing an amended complaint. The Court expects this exercise in efficiency will obviate the need to file most motions to dismiss. Indeed, when the Court grants a motion to dismiss, it typically grants leave to amend unless it is "certain from the face of the complaint that any amendment would be futile or otherwise unwarranted." *Harris v. Meisner*, No. 20-2650, 2021 WL 5563942, at *2 (7th Cir. Nov. 29, 2021) (quoting *Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 524 (7th Cir. 2015)). Therefore, it is in both parties' interest to discuss the matter prior to motion submissions. Briefs in support of, or opposition to, motions to dismiss

should cite no more than ten (10) cases per claim. No string citations will be accepted. If Defendants file a motion to dismiss, Plaintiff is hereby warned that he must file a response, in accordance with Civil Local Rule 7 (E.D. Wis.), or he may be deemed to have waived any argument against dismissal and face dismissal of this matter with prejudice.

Dated at Milwaukee, Wisconsin, this 9th day of September, 2026.

BY THE COURT:

J. P. Stadtmueller
U.S. District Judge

Plaintiffs who are inmates at Prisoner E-Filing Program institutions shall submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the Court. Prisoner E-Filing is mandatory for all inmates at Columbia Correctional Institution, Dodge Correctional Institution, Green Bay Correctional Institution, Oshkosh Correctional Institution, Waupun Correctional Institution, and Wisconsin Secure Program Facility.

Plaintiffs who are inmates at all other prison facilities, or who have been released from custody, will be required to submit all correspondence and legal material to:

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

**DO NOT MAIL ANYTHING DIRECTLY TO THE COURT'S CHAMBERS**. If mail is received directly to the Court's chambers, **IT WILL BE RETURNED TO SENDER AND WILL NOT BE FILED IN THE CASE**.

Plaintiff is further advised that failure to timely file any brief, motion, response, or reply may result in the dismissal of this action for failure to prosecute. In addition, the parties must notify the Clerk of Court of any change of address. **IF PLAINTIFF FAILS TO PROVIDE AN UPDATED ADDRESS TO THE COURT AND MAIL IS RETURNED TO THE COURT AS UNDELIVERABLE, THE COURT WILL DISMISS THIS ACTION WITHOUT PREJUDICE**.